is established by the clearest and most convincing proof; and that certainly cannot be said of the present case.

Our attention has been directed to a number of exceptions taken to the admission and exclusion of evidence during the progress of the trial, but none of these, in our opinion, presents reversible error, and but one requires special notice. The defendant offered in evidence a letter bearing date May 1, 1897, written by Mr. E. A. Tallman to Frederick H. Lawrence. This was objected to by the plaintiff's counsel, and the same was thereupon excluded. It seems that the writer of this letter was a director and vice president of the plaintiff bank, and it was offered upon the assumption that it tended to strengthen the construction placed upon the letter of April 28th, written by the plaintiff's president, Mr. Symonds. We have examined this letter with some care, and find nothing in it which will support this contention. But, were it not so, the letter, in the circumstances of the case, would be inadmissible for any purpose. It does not purport to be written by Mr. Tallman in his official capacity, and is not even written upon bank paper. So far as appears, it was merely a friendly letter, written by one person to another, and as such could have no effect upon the issues which were being tried, nor could it aid or prejudice either party to the action. Our conclusion of the entire matter, therefore, is that the judgment appealed from should be affirmed.

Judgment affirmed, with costs. All concur.

---

(63 App. Div. 473.)

PETRIE v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. RAILROADS—COLLISION—APPEAL.
    Where the evidence is sufficient to justify the submission of questions to the jury, their findings will not be disturbed.

2. SAME—ADEQUATE SIGNALS—QUESTIONS FOR JURY—INSTRUCTIONS.
    Plaintiff's intestate was killed at a railway crossing. The railroad approached the crossing in a cut, and on a sharp curve, and the highway on which intestate was traveling was also in a cut, so that in approaching the crossing the train was not visible until very near the track. The train was running at a high speed, and there was evidence that no warning of the approach of the train was given. *Held*, that it was not error to submit to the jury whether customary signals, if given, were adequate, with a further instruction that it was for them to say whether any signals which might have been given were sufficient to notify decedent of the approaching train.
    McLennan and Williams, JJ., dissenting.

Appeal from trial term, Jefferson county.

Action by Eugenie A. Petrie, as administratrix of the estate of Charles A. Petrie, deceased, against the New York Central & Hudson River Railroad Company. From a judgment in favor of plaintiff, and from an order denying its motion for a new trial, defendant appeals. Affirmed.

On the 29th day of July, 1899, the plaintiff's intestate, Charles A. Petrie, was killed at a railroad crossing known as "Rock Out Crossing," situate in the village of Clayton, Jefferson county, N. Y., by coming into collision with

one of the defendant's locomotives. The intestate, with his family, consisting of his wife, the plaintiff herein, and two children,—a son 18 years of age and a daughter aged 20,—occupied a farm in the town of Clayton, located about a mile from the above-mentioned crossing, where he had resided for upward of 11 years. He left his home on the morning in question at about 6 o'clock, with a team of horses attached to a platform wagon, and drove to the neighboring village of Lafargeville, where he delivered a number of calves, which he had sold to a party in that village. After transacting his business at Lafargeville, he started for home, reaching the crossing at 22 minutes after 10 o'clock in the forenoon, and, while attempting to cross the railroad track, was struck by a local passenger train and killed. At the point of crossing, the highway runs east and west, and the railroad, which has but a single track, crosses it at an angle of about 45 degrees, running northwest and southeast. The train in question was proceeding northwesterly, and was about 10 minutes behind time. Its schedule rate of speed was 40 miles an hour, and there was evidence tending to show that it was running at a much faster rate. There was also evidence from which the jury were at liberty to find that not only were the customary signals omitted, but that no other warning of the approach of the train was given in their stead. A verdict of $3,500 was rendered in favor of the plaintiff, and from the judgment entered thereon, as well as from an order denying the defendant's motion for new trial upon the minutes of the court, this appeal is brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ. ·

Henry Purcell, for appellant.

John N. Carlisle, for respondent.

ADAMS, P. J. The evidence of the defendant's negligence and of the absence of contributory negligence upon the part of the plaintiff's intestate, while perhaps not entirely convincing, was nevertheless sufficient to justify the trial court in submitting those questions to the jury, and consequently we do not feel at liberty to set aside their verdict as against the weight of evidence. The only other questions which require our consideration arise out of exceptions taken to a single portion of the charge of the court, as well as to refusals to charge in accordance with certain requests of the defendant's counsel. In the body of the charge the learned trial justice, in discussing the evidence relating to the giving of signals by the train as it approached the crossing, used this language:

"If you find that no signal whatever was given, I apprehend that you will have no difficulty in coming to the conclusion that the defendant was negligent. If you find that a signal was given at the whistling post, and that the bell was thereafter continuously rung, I do not say that I can charge you absolutely that those signals would justify, as matter of law, a finding that the defendant was free from negligence. Just what signals are to be given under the circumstances of this case—just what signal is adequate and necessary—is for you to determine."

To this portion of the charge an exception was taken in due time by the defendant's counsel, who thereupon requested the court to charge:

"That the defendant had the right to run its trains at any rate of speed over the crossing in question, providing it gave warning of its approach by sounding the whistle at the whistling post, and ringing the bell from there to the crossing."

This request being refused, the defendant's counsel then asked the court to charge:

"That if the jury find that the whistle was sounded by two long and two short blasts at the whistling post, and that the bell was rung from there to the crossing, and the emergency signal given as testified, such warning was adequate notice of the approach of the train, and the plaintiff cannot recover."

——Which request was also refused by the court, whereupon counsel submitted still another request in these words, viz.:

"I ask your honor to charge the jury, if, on the approach of the train to the crossing, commencing at the whistling post, the whistle for the crossing was blown, and the bell was rung from there to the crossing, and subsequently, before reaching the crossing, the emergency signals—the danger signals—were given as testified, that the defendant did all it could, under the circumstances of this case, to relieve itself from negligence, and to warn the deceased of the approach of the train to the crossing, and therefore there can be no recovery."

——And, the court declining to charge in accordance with such request, an exception to this, as well as to the other refusals, was duly taken.

It will be observed that all these exceptions relate to and involve the same subject-matter, viz. the duty which the law imposes upon a railroad company to give due and adequate warning of the approach of its trains to a highway crossing. This duty, which was formerly regulated in a large measure by statute, is one which still exists, notwithstanding the repeal of the statute specifying the particular manner in which the duty was to be performed. In other words, a railroad company now, as formerly, owes a duty to the public to run its trains with care and caution at highway crossings, and its omission to give warning of an approaching train by what were known as the "statutory signals," or in some other equally efficient manner, may properly be considered in all crossing cases as bearing upon the question of the company's negligence. Vandewater v. Railroad Co., 135 N. Y. 583, 32 N. E. 636, 18 L. R. A. 771. The learned counsel for the defendant, in formulating his requests, apparently assumed that, notwithstanding the repeal of the statute requiring the bell to be rung or whistle sounded by a train when approaching a crossing, the giving of those signals would absolve the defendant from the charge of negligence in the operation of its railroad. We do not, however, think this assumption is justified by the rule which now obtains; for, while it is not impossible to conceive of a case where the employment of such signals would be held sufficient as matter of law, yet, as we understand the rule, it is now, generally speaking, a question of fact for the jury to determine whether, under all the circumstances of a given case, a railroad company should have adopted some other precautions than those which were actually employed in the operation and management of its train while approaching a highway crossing. Cumming v. Railroad Co., 104 N. Y. 669, 10 N. E. 855. We do not deem it necessary, however, for the purposes of this review, to apply the rule as broadly as we have just stated it; for we think that the facts of the case are such as would have justified the court in leaving it to the jury to say whether the ringing of the bell, or the sounding of the whistle, or both, would have been such a warning as would have relieved the defendant from a charge of negligence, even if the former statute were still in existence.

Harty v. Railroad Co., 42 N. Y. 468; Dyer v. Railway Co., 71 N. Y. 228; Thompson v. Railroad Co., 110 N. Y. 636, 17 N. E. 690; Finn v. Railroad Co., 42 App. Div. 524, 59 N. Y. Supp. 771. It appears that the defendant's track approaches the crossing from the southeast, upon a sharp curve, and in a cut through solid rock for a distance of about 60 rods; that the highway is likewise cut through rock and earth to a point quite near the track, at which place the cut is very nearly 9 feet in depth. The evidence also tended to establish the presence of several buildings and an apple orchard, which, together with the configuration of the several approaches, so obstructed the view that a person standing upon the easterly rail of the railroad track, at the crossing, could see a train approaching from the southeast for a distance of only 450 feet, or thereabouts, and this view gradually decreased as he passed east until he reached a point 22 feet from the easterly rail, when the tracks could be seen for a distance of but 130 feet, and then they passed out of sight entirely until a point was reached upon the highway from which a view of an approaching train could be obtained before it entered the cut. It was also proven that the railroad tracks crossed the highway upon a down grade, so sharp as to enable a train to move at a high rate of speed from its own momentum, and that the train with which the plaintiff's intestate collided was thus proceeding at the time of the accident. This being the situation which confronted the plaintiff's intestate as he was about to cross the defendant's track, it may well be doubted whether the ringing of a bell or the blowing of a steam whistle would have apprised him of the danger which threatened him; and, if so, then it was entirely proper for the trial court, in any view of the case, to permit the jury to say whether such signals, even if given, were adequate, and all that could have been required of the defendant under the circumstances. It is said, however, that the court went further than this, and allowed the jury to speculate as to what signals were adequate and necessary. One answer—and a sufficient one—to this proposition is that the defendant's exception to this portion of the charge was not sufficiently explicit to fairly raise such a question as the one just adverted to, inasmuch as it did not point out the particular vice complained of in such a way as to enable the trial justice to correct the error, if one was committed. Cumming v. Railroad Co., supra. But, taking the charge in its entirety, we do not think it is open to the criticism made by counsel. The learned trial justice did not direct the jury to determine the character of additional signals, or what they should be. He did not even say that other signals ought to have been given. He simply left it to them to say "whether or not, under the circumstances of the case, considering the speed of the train, as you shall find it to be, considering the nature and condition of the crossing as you shall find it to be, whether or not the defendant gave a timely and reasonable warning of the approach of its train"; adding that, if it did, their verdict must be for the defendant. And upon the conclusion of the principal charge the court, at the request of the plaintiff's counsel, further instructed the jury that it was for them to say "whether any warning signals that they might find were given were

sufficient to notify the deceased of the approach of the said train."
We think this is a correct statement of the rule applicable to the cir-
cumstances of this case, and that, when taken in connection with the
preceding instructions, it so completely modified the language com-
plained of that the jury could not have misapprehended the simple
question which they were called upon to consider and determine.
Lunham v. Hafner, 5 App. Div. 480, 38 N. Y. Supp. 1060. It follows
that the judgment and order appealed from should be affirmed.

Judgment and order affirmed, with costs.

SPRING and RUMSEY, JJ., concur.

McLENNAN, J. (dissenting). The evidence in this case tending to
establish negligence on the part of the defendant was directed ex-
clusively to proving that the whistle was not sounded or the bell
rung as the train approached the crossing where the accident occur-
red; and it was urged that the omission to give such warning, in
view of the great speed at which the train was running, established
negligence on the part of the defendant. The learned trial judge
charged that negligence could not be predicated upon the speed at
which the train was moving, or upon the fact that a flagman was
not stationed at the crossing. Under those circumstances I think
that the portion of the charge referred to in the prevailing opinion
was erroneous, for the reason that it permitted the jury to speculate
as to whether or not the defendant should have done something else,
not in any manner pointed out or indicated by the evidence in the
case, in order to relieve itself from the charge of negligence, even
if they found that the whistle was sounded at the whistling post,
and the bell rung continuously from that point to the crossing.
There was no evidence tending to show that, if such signals had been
given, they could not have been readily heard by the plaintiff's in-
testate. The sole issue as to defendant's negligence was whether
or not those or any signals were given; but the jury, by the charge
and by the refusal to charge as requested, were given to understand
that they had a right to conclude that the defendant should have
given some other or different warning, which was in no manner indi-
cated by the evidence, and that on its omission to give such other
or different warning they had a right to base a finding of negligence.
We think it is not the rule that a jury in a negligence case may
be told, in substance, "If you find that the defendant did all the
things which the plaintiff, by the evidence, claims it ought to have
done, still it is for you to determine whether or not the defendant
should have done other things, not pointed out or indicated by the
evidence; and, if you find that it should, you may find it guilty of
negligence because of its failure to do such other acts." Under such
a ruling a defendant might be charged with negligence by a jury,
without knowing, or having the means of knowing, upon what act or
omission such charge was based, and therefore would be deprived of
any means of reviewing such determination, or of determining
whether it was properly founded or not. In the case at bar, sup-
pose the jury had determined and based its finding of negligence on

the part of the defendant upon the fact that it did not continuously blow the whistle and ring the bell from a point several miles distant from the crossing, clearly, such finding would not be permitted to stand. Yet, so far as appears, the verdict of the jury in this case may have been based upon that proposition, or one equally untenable; for, as we have seen, the jury were told, in substance, that if they found that the whistle was blown at the whistling post, and the bell rung continuously from that point to the crossing, as claimed by the defendant and denied by the plaintiff, and although there was no evidence tending to show that, if such signals had been given, they could not readily have been heard at the crossing, still it was within the province of the jury to determine what other signals, in no manner specified in the evidence or referred to by the court, should have been given in order to relieve the defendant from the charge of negligence. This, we think, clearly left it to the jury to speculate and draw upon their respective imaginations for the purpose of determining what else ought to have been done by the defendant in order to make the operation of defendant's trains at the place in question reasonably safe. Our conclusion is that the charge and refusal to charge as requested, which are set forth at length in the prevailing opinion, present reversible error, and that the judgment and order appealed from should be reversed, and a new trial granted.

WILLIAMS, J., concurs.

